UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOUNTAIN F. ENTERPRISES, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>WIARCOM, INC., a Texas corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | No. 2:19-cv-02023-JAM-CKD<br><br>**ORDER DENYING WIARCOM'S MOTION TO TRANSFER VENUE AND GRANTING WIARCOM'S MOTION TO DISMISS** |

Mountain F. Enterprises, Inc. ("MFE") brings this action against WiarCom, Inc., alleging breach of contract and fraud. Compl., ECF No. 1. In response, WiarCom filed a motion to dismiss and a motion to transfer venue. Mot. to Dismiss, ECF No. 14; Mot. to Transfer, ECF No. 18.[1] WiarCom argues the Court should transfer this case because WiarCom's contracts with MFE designated the Southern District of Texas as the proper venue.

---

[1] These motions were determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 25, 2020.

1

Mot. to Transfer at 6-8.  Moreover, WireCom maintains whichever court retains jurisdiction over the suit should dismiss MFE's fraud claim under Rule 12(b)(6).  Mot. to Dismiss at 3-11.

MFE disagrees on both fronts.  Opp'n, ECF No. 24.  It contends the parties' contracts did not properly incorporate the forum selection clause contained in WiarCom's terms and conditions.  Id. at 17-23.  MFE also argues it properly pled each of the five elements of fraud.  Id. at 14-17.

The Court agrees with MFE that the Service Rate Plans failed to clearly and unequivocally incorporate WiarCom's online terms and conditions.  The forum-selection clause contained in those terms therefore does not apply; WiarCom's motion to transfer venue is denied.  But the Court agrees with WiarCom that MFE's complaint fails to allege a claim of fraud.  The Court dismisses this claim without prejudice.

## I.  BACKGROUND

WiarCom and its sister company, Advanced Tracking Technologies, Inc. ("Advanced Tracking") supply their customers with wireless GPS vehicle tracking units and provide related services.  Compl. ¶ 5.  In 2009, Advanced Tracking first contacted MFE to sell its GPS devices.  Compl. ¶ 7.  They reached an agreement four years later.  Compl. ¶ 8.  In the six years that followed, Advanced Tracking and MFE executed between 21 and 25 more "Service Rate Plans."  Id.; see also Gomez Decl. ¶ 4, ECF No. 24-3.

In 2019, MFE became increasingly dissatisfied with the tracking units Advanced Tracking Technologies provided.  Compl.

¶ 19. In March, MFE reported that, nearly 20% of the tracking units were inoperable. Id. Replacing these units forced MFE to incur additional expenses—specifically, the cost of removing non-functioning units, returning those units, and installing replacement units. Id. Moreover, MFE maintains it received two charges for each of these expenses: one from Advanced Tracking and one from WiarCom. Id.

Unable to resolve the issues surrounding the additional fees and dysfunctional units, MFE returned all its units to Advanced Tracking Technologies. Compl. ¶ 20. Advance Tracking Technologies responded, directing MFE to contact WiarCom directly if it wished to terminate its Service Rate Plans. Compl. ¶ 23. WiarCom then emailed MFE, notifying the company that it would be subject to the early termination fees and equipment return fees contained in the contract's terms and conditions. Compl. ¶ 24.

MFE filed suit, alleging WiarCom (1) breached the Services Rate Plans by overcharging MFE and providing inoperable units, and (2) committed fraud by intentionally obscuring material terms of the Service Rate Plans. Compl. ¶¶ 26-29, 35-40.

## II. OPINION

### A. Evidentiary Objections

WiarCom argues MFE "inappropriately offers purported factual evidence" in the declarations it filed alongside its opposition. Reply at 5, ECF No. 27. It is true that, generally, "a district court may not consider any material beyond the pleadings in a ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

The two exceptions to this rule are materials that a plaintiff incorporates by reference into its complaint and those that are proper subjects of judicial notice. Id. The declarations included with MFE's opposition do not fall under either exception; the Court has not considered them in deciding WiarCom's motion to dismiss.

But Rule 12(b)(6)'s evidentiary restrictions do not apply when a court adjudicates a motion to transfer venue. Cf. S & J Rentals, Inc. v. Hilti, Inc., 294 F. Supp. 3d 978, 983 (E.D. Cal. 2018); Anza Tech., Inc. v. Mushkin, Inc., No. 2:17-cv-00656, 2017 WL 6538981, at *1 (E.D. Cal. Dec. 21, 2017). In resolving motions for improper venue or motions to transfer venue, "the court need not accept the pleadings as true and may consider supplemental written materials and facts outside the pleadings." Anza Tech., Inc., 2017 WL 6538981, at *1. The Court therefore has looked beyond the four corners of MFE's complaint in resolving WiarCom's motion to transfer venue.

B. Request for Judicial Notice

WiarCom requests the Court take judicial notice of the webpage containing its "General Terms and Conditions of Services." Def.'s RJN ISO Mot. to Dismiss, ECF No. 17; Def.'s RJN ISO Mot. to Transfer, ECF No. 21. Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). Moreover, it is well-established that courts may take judicial notice of matters

4

of public record. Finder v. Leprino Foods Co., No. 1:13-cv-02059-AWI-BAM, 2019 WL 6894468, at *3 n.1 (E.D. Cal. Dec. 18, 2019).

The web page that lists WiarCom's terms and conditions is a matter of public record and, therefore, a proper subject of judicial notice. See Trudeau v. Google LLC, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018). The page is not, however, found at the hyperlink WiarCom includes in its request for judicial notice. The Court, instead, takes judicial notice that WiarCom's terms and conditions web page is available at https://www.wiarcom.com/TermsAndConditionsOfService.pdf. By judicially noticing this page, the Court takes as true that the web page exists and makes certain representations about the company's policies. The Court does not, however, presume that all or any of MFE's agreements with WiarCom properly incorporated those terms. Subject to this caveat, Defendant's request is granted.

### C. Motion to Transfer Venue

Venue is proper (1) in a judicial district in which any defendant resides; (2) in a judicial district in which a substantial part of the events giving rise to the claim occurred; or (3) if no judicial district is otherwise appropriate, in any judicial district in which any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b). But even when a plaintiff has filed suit in a venue deemed proper under Section 1391(b), a defendant may still move to transfer "any civil action to any other district or division where it might have been brought or to any district or division

to which all parties have consented." 28 U.S.C. § 1404. Section 1404 is the proper mechanism for enforcing a forum-selection clause that points to another federal district. Atlantic Marine Constr. Co. v. U.W. Dist. Court for Western Dist. Of Texas, 571 U.S. 49, 59 (2013).

Normally, section 1404 requires district courts to "evaluate both the convenience of the parties and various public-interest considerations." Id. at 62. Courts "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" Id. at 62-63 (quoting 28 U.S.C. § 1404(a)). But when the parties are bound by a valid forum-selection clause, a court must transfer the case to the agreed-upon district "absent extraordinary circumstances unrelated to the convenience of the parties." Id. at 62. "[A] proper application of § 1404 requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. at 59-60 (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring)).

But "[b]efore the court may consider the impact of any forum selection clause on [a] plaintiff's choice of forum . . ., it must first determine whether a contract exists and[] whether it contains the forum selection clause at issue." Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co., 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014). Here, the parties do not dispute that they entered into valid contractual agreements. Rather, they disagree about whether the agreements properly

6

incorporated by reference the terms and conditions on WiarCom's website—terms and conditions that included, among other things, a forum-selection clause. Mot. to Transfer at 6-10; Opp'n at 17-23.

"A contract may validly include the provisions of a document not physically part of the basic contract." Shaw v. Regents of Univ. of Cal., 58 Cal. App. 3d 44, 54 (2009). Under California law, the incorporation by reference doctrine is not one to prioritize form over substance. A "contract need not recite that it 'incorporates' another document" to avail itself of the doctrine's benefits. The reference must, nevertheless, be "clear and unequivocal." Id. It must "guide[] the reader to the incorporated document" such that the terms referenced are "easily accessible to the contracting parties." Id. at 54-55 (quoting Chan v. Drexel Burnham Lambert, Inc., 178 Cal. App. 3d 632, 644 (1986); Williams Constr. Co. v. Standard-Pac. Corp., 254 Cal. App. 2d 442, 454 (1967)).

WiarCom argues that each of the Service Rate Plans clearly and unequivocally incorporates the terms and conditions listed on its website. The Court disagrees. The Service Rate Plans include a section labeled "Additional Terms and Conditions. Compl. ¶ 11; see also Ex. A to Compl., ECF No. 1-2. Paragraph 3 of that section states, "Service is to be provided in accordance with the current Terms and Conditions of Service found at www.WiarCom.com." Ex. A to Compl. At 1. But, as MFE argues, www.WiarCom.com links to WiarCom's homepage. Opp'n at 19. This page does not contain WiarCom's terms and conditions, nor does it feature any clear reference to those terms. See WiarCom.com.

WiarCom insists its terms and conditions "can be easily found on www.WiarCom.com because that website contains little content and only seven links." Mot. to Transfer at 7. Indeed, it argues, "[a]n internet user should be able to find the Terms and Conditions within only a few minutes of browsing the website." Id. But this argument is undermined by the stark differences between how WiarCom's exhibits depict its homepage and how WiarCom.com actually looks online:




Compare WiarCom.com, with Ex. A to Shepperd Decl., ECF No. 20-1.

WiarCom depicts its homepage as seven links on a blank canvas; each as obvious as the next. See Ex. A to Shepperd Decl. This is misleading. Simply visiting WiarCom.com reveals that some links are more apparent than others. The webpage includes five large tabs at the top, each distinguished from the other and set apart from the dark background. The sixth link is in a white text box on the right side of the screen: "HERE" bolded, underlined, and capitalized. But in case you still missed it, there is a large grey bubble overhead, exclaiming "NEW!" in blue block letters. Then, relegated to the bottom of the page, is a single line of text: WiarCom™, Inc. © 2006 – 2019. All rights reserved. | Legal Notices. It's the only time

black, non-specialized font sits directly against the web page's dark grey background.  The words "Legal Notices" link to a page containing WiarCom's terms and conditions.  The domain name for that page is https://www.wiarcom.com/Mobile-Communication-Legal/Legal-Notices.html.

WiarCom argues this practice is no different than those approved in Chudner v. TransUnion Interactive, Inc., 626 F. Supp. 2d 1084, 1090 (D. Or. 2009) and Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496 (M.D.N.C. 2014).  But neither Chudner nor Turfworthy aid this Court's analysis.  Neither case arises in this district or applies California's "clear and unequivocal" test.  Furthermore, the facts of both cases are too different from this one to provide a helpful analog.

First, the contract in Chudner did not even implicate incorporation by reference doctrine.  626 F. Supp. 2d at 1086.  In Chudner, the company placed an agreement in a small text box on its webpage that forced customers to press a scroll button 48 times before reaching the forum-selection clause.  Id.  Chudner addressed the question of whether formatting the agreement this way rendered the forum-selection clause an unconscionable "surprise."  Id. at 1089-90.  The "clear and unequivocal" standard did not apply to this analysis.

Although Turfworthy does involve a valid incorporation by reference, it still does not compel the result WiarCom seeks.  In Turfworthy, a company purported to incorporate its terms and conditions into an agreement it entered with the plaintiff.  26 F. Supp. 3d at 504.  The agreement and related documents stated

9

that they incorporated the company's "Standard Terms and Conditions." Id. In reality, the company's terms and conditions were in a document titled, "General Terms and Conditions." Id. The court nonetheless found the incorporation was proper because the incorporating document specifically directed the plaintiff to the location of the terms being incorporated. See id. at 504. The document read, "We also call your attention to the statement at the bottom of each of your company's Order Confirmations for all the yarns we ordered that your 'Standard Terms and Conditions apply to all offers and sales contracts . . . .'" Id. Put simply, the clarity of the instructions provided offset the nominal mis-match between the incorporating document's reference and the title of the incorporated document. Id. But WiarCom's contract does not provided this clarity. Unlike the agreement in Turfworthy, the Service Rate Plans do not "guide" the parties to the incorporated document. Instead, it sent MFE to a generic webpage where the least obvious hyperlink was the one MFE was supposed to find. Contra Int'l Star Registry of Ill. v. Omnipoint Marketing, LLC, No. 05-cv-6923, 2006 WL 2598056, at *3 (finding an incorporation was sufficiently "clear and specific" where it described the document being incorporated and links to a "specific web page"). The relevant link was obscured at the bottom of the page and its title, "Legal Notices," did not match the title referenced in the agreement. It was certainly possible for MFE to find WiarCom's Terms and Conditions within the maze WiarCom created. But California law requires an incorporation to be "clear and unequivocal," not simply

conceivable. Shaw, 58 Cal. App. 4th at 54.

Absent a valid forum-selection clause, the movant bears the burden of showing transfer is proper under 28 U.S.C. § 1404(a). Celtic Int'l LLC v. J.B. Hunt Transport, Inc., 234 F.Supp. 1034, 1042 (E.D. Cal. 2017). WiarCom failed to show a valid forum-selection clause bound the parties. Nor did it identify any other basis for transferring the suit. The Court therefore denies WiarCom's motion to transfer venue.

### D. Motion to Dismiss

WiarCom also brings a motion to dismiss, arguing that Rule 12(b)(6) requires dismissal of MFE's fraud claim. MFE's complaint alleges WiarCom committed fraud by "fraudulently inducing MFE to sign the Service Rate Plans without disclosing" all of the contracts' material terms. Compl. ¶ 36. WiarCom first contends this allegation cannot serve as the basis of a fraud claim because each term MFE challenges was, by law, properly incorporated into the Service Rate Plans. Mot. to Dismiss at 5-8. As discussed above, this argument is without merit. WiarCom urges dismissal is nonetheless proper because MFE's fraud claim is insufficiently pled. Id. at 8-11. On this point, the Court agrees.

To state a claim of fraud under California law, a plaintiff must allege (1) misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damage. Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 990 (2004). Every element of a fraud claim "must be specifically pleaded; a general pleading of the legal conclusion . . . is

11

insufficient." Tindell v. Murphy, 22 Cal. App. 5th 1239, 1249 (2018).

MFE identifies several purported deficiencies in its contracts with WiarCom: the agreements obscured the existence of early termination fees and equipment return fees; they improperly minimized the font size of certain provisions; they failed to hyperlink "www.WiarCom.com" until after MFE signed the agreement; and they did not properly direct MFE to WiarCom's terms and conditions webpage. Compl. ¶ 36. These allegations—at best—only satisfy the first element of fraud. But MFE's complaint fails to specifically allege WiarCom had knowledge of any falsities or an intent to defraud. MFE attempts to fulfill this requirement in paragraph 37 of its complaint:

> WiarCom intentionally designed its Service Rate Plans in the manner described above with specific intent and for the sole purpose of inducing and defrauding MFE to enter into the Service Rate Plans without actual or constructive knowledge of the additional terms and conditions so that WiarCom could unjustly enrich itself.

Compl. ¶ 37. MFE's opposition brief fails to identify any cases where this type of conclusory allegation has been enough to state a claim for fraud under either Rule 12(b)(6) or California law. Indeed, this Court finds the caselaw directs otherwise. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Tindell, 22 Cal. App. 5th at 1249. Accordingly, the Court dismisses MFE's fraud claim without prejudice.

E. Page Limits

The Court's Order re Filing Requirements ("Order"), ECF No. 3-2, limits memoranda in support of and opposition to motions to dismiss and motions to transfer venue to fifteen pages. Order at

1. A violation of the Order requires the offending counsel (not the client) to pay $50.00 per page over the page limit to the Clerk of Court. Id.

WiarCom argues MFE's twenty-five page opposition violates the Court's page limits. In doing so, WiarCom ignores the fact that MFE's opposition responded to the two motions WiarCom filed—motions that, when added together, total twenty-three pages. WiarCom made a strategic choice to file its motions separately, availing itself of additional pages on which to air its arguments. The Court declines to penalize MFE for responding in kind.

## III. ORDER

For the reasons set forth above, the Court DENIES WiarCom's motion to transfer venue and GRANTS WiarCom's motion to dismiss. The Court dismisses MFE's fraud claim WITHOUT PREJUDICE. If MFE elects to amend its complaint with respect to this claim, it shall file a First Amended Complaint within thirty (30) days of this Order. WiarCom's responsive pleading is due thirty (30) days thereafter.

IT IS SO ORDERED.

Dated: March 31, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE